**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| Daniel Stewart, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:21-cv-89 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| David W. Martin, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING, IN PART, THE MOTION FOR SUMMARY JUDGMENT OF PLAINTIFFS DANIEL STEWART AND RACHEL KOSOFF (DOC. NO. 63); DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 67); AND GRANTING, IN PART, AND DENYING, IN PART, DEFENDANTS BETSY MARTIN-SMITH, JANET BERTOLINO, JESSICA MARTIN BRYAN, ANDREW BERTOLINO, CHRISTINA MARTIN, DOMINIC BERTOLINO, KATHRYN MARTIN, ELIZABETH BERTOLINO, SAM MARTIN, SUSAN M. WEINERT, ELLIE D. SMITH, HANNAH WEINERT, CHRISTOPHER M. SMITH, AND CALLIE WEINERT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 (DOC. NO. 69)**

---

Presently before the Court are three separate motions for summary judgment: Motion for Summary Judgment of Plaintiffs Daniel Stewart and Rachel Kosoff (Doc. No. 63); Defendant's Motion for Summary Judgment (Doc. No. 67); and Defendants Betsy Martin-Smith, Janet Bertolino, Jessica Martin Bryan, Andrew Bertolino, Christina Martin, Dominic Bertolino, Kathryn Martin, Elizabeth Bertolino, Sam Martin, Susan M. Weinert, Ellie D. Smith, Hannah Weinert, Christopher M. Smith, and Callie Weinert's Motion for Summary Judgment Pursuant to Rule 56 (Doc. No. 69).

As explained below, the Court **GRANTS, IN PART,** the Motion for Summary Judgment of Plaintiffs' Daniel Stewart and Rachel Kosoff (Doc. No. 63); **DENIES** Defendant's Motion for

Summary Judgment (Doc. No. 67); and **GRANTS, IN PART, AND DENIES, IN PART,** Defendants Betsy Martin-Smith, Janet Bertolino, Jessica Martin Bryan, Andrew Bertolino, Christina Martin, Dominic Bertolino, Kathryn Martin, Elizabeth Bertolino, Sam Martin, Susan M. Weinert, Ellie D. Smith, Hannah Weinert, Christopher M. Smith, and Callie Weinert's Motion for Summary Judgment Pursuant to Rule 56 (Doc. No. 69). The Court enters judgments on liability only in favor of Plaintiffs on Count I, Breach of Trust Pursuant to Ohio R.C. 5810.01, and Count II, Breach of Fiduciary Duty. The Court further dismisses Count V, Constructive Trust Pursuant to 5810.09.

## I.     <u>BACKGROUND</u>

This matter stems from disputes involving a Second Restatement of Declaration of Trust ("Trust") executed by Lester Martin ("Lester") on May 15, 1990 and that was subsequently restated in 1995 and 2002. (Doc. No. 54-1.) The Trust provided that, upon Lester's death, the Trust's assets would be divided evenly among his living children and the offspring of his deceased children. (Doc. No. 54-1 at PageID 333.) Lester and his wife, who predeceased him, had five children: David Martin ("David"), Betsy Martin Smith, Janet Bertolino, Susan Weinert, and Sarah Stewart.[1] (Doc. No. 54 at PageID 301-02; Doc. No. 55 at PageID 373-74; Doc. No. 56 at PageID 392.) Sarah Stewart died on April 3, 2011 and is survived by her two children, Daniel Stewart and Rachel Kosoff (together, "Plaintiffs"). (*Id.*) Lester also had eleven other grandchildren: Jessica Martin Bryan, Andrew Bertolino, Christina Martin, Dominic Bertolino, Kathryn Martin, Elizabeth Bertolino, Sam Martin, Ellie D. Smith, Hannah Weinert, Christopher M. Smith, and Callie Weinert (together, "Grandchildren Beneficiaries").

On February 20, 2018, Lester executed a First Amendment of Second Restatement of

---

[1] Betsy Martin Smith, Janet Bertolino, and Susan Weinert are herein referred to as "Sibling Beneficiaries."

Declaration of Trust, appointing David as successor trustee. (Doc. No. 54-1 at PageID 358-59.) On the same day, Lester resigned as trustee and David accepted his appointment as trustee. (*Id*. at PageID 360-61.) Also on February 20, 2018, Lester executed a Durable Power of Attorney ("POA") in which he granted power of attorney to David. (Doc. No. 54-2.)

### A. **Trust Payments**

Over the course of 2019 and 2020, David made several distributions from the Trust to Plaintiffs and Sibling Beneficiaries and Grandchildren Beneficiaries (collectively, "Beneficiary Defendants"), including:

2019

- April 28, 2019:
    - $165,000 Grandchildren Beneficiaries ($15,000 each).

- December 15, 2019:
    - $8 million to David and Sibling Beneficiaries ($2,000,000 each). $1.1 million to Grandchildren Beneficiaries ($100,000 each).
    - $200,000 to Plaintiffs ($100,000 each).

2020

- March 6, 2020:
    - $3 million to David and Sibling Beneficiaries ($750,000 each).
    - $165,000 to Grandchildren Beneficiaries ($15,000 each).

- March 10, 2020:
    - $800,000 to David and Sibling Beneficiaries ($200,000 each).
    - $400,000 to 2012 trusts for the benefit of Plaintiffs ($200,000 each).
    - $100,000 to Plaintiffs ($50,000 each).

3

(Doc. No. 54 at PageID 306-07; Doc. No. 55 at PageID 377; Doc. No. 56 at PageID 395.)

Lester died on March 13, 2020. (Doc. No. 54 at PageID 308; Doc. No. 55 at PageID 378; Doc. No. 56 at PageID 395.)

### B. Procedural Background

Plaintiffs filed their Complaint on March 11, 2021 (Doc. No. 1) and subsequently filed a First Amended Complaint ("Amended Complaint") on December 22, 2021 (Doc. No. 54). Plaintiffs allege claims of breach of trust, breach of fiduciary duty, conversion, intentional interference with an expectancy of inheritance, constructive trust, recission of the authorization or direction of distributions from trust for lack of capacity, recission of authorization or direction of distributions from the trust for undue influence, recission of the power of attorney for lack of capacity, and recission of the power of attorney for undue influence. (Doc. No. 54 at PageID 308-24.) Plaintiffs filed their summary judgment motion on August 12, 2022 (Doc. No. 63); David filed his opposition on October 10, 2022 (Doc. No. 70); and, Plaintiffs filed their reply on October 24, 2022 (Doc. No. 73). David filed his summary judgment motion on September 30, 2022 (Doc. No. 67); Plaintiffs filed their opposition on October 21, 2022 (Doc. No. 72); and David filed his reply on November 4, 2022 (Doc. No. 74). Beneficiary Defendants filed their summary judgment motion on October 4, 2022 (Doc. No. 69); Plaintiffs filed their opposition on October 21, 2022 (Doc. No. 71); and, Defendant Beneficiaries filed their reply on November 4, 2022 (Doc. No. 75). The Court held an oral argument on February 2, 2023. This matter is fully briefed and ripe for review.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on

which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c). The burden then shifts o the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to

determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id.*

As judgment is sought on claims brought under Ohio law, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co.v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "in accordance with the then-controlling decision of the highest court of the State." *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001). To the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* This is done by looking to other available data, which "include decisions of the state appellate courts, and those decisions should not be disregarded unless" presented with persuasive data that the Supreme Court of Ohio would decide otherwise; instead, such decisions should be given weighty, but not controlling, deference. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454; *see also Babcock Power, Inc. v. Kapsalis*, 854 F. App'x 1, 5 (6th Cir. 2021).

## III.  ANALYSIS

Plaintiffs' motion seeks summary judgment on Count I, breach of trust, and Count II, breach of fiduciary duty. Specifically, Plaintiffs argue that David breached the trust and his

fiduciary duty because there were no writings directing him to make the distributions he made and the distributions were not made for the benefit of Lester.  (Doc. No. 63 at PageID 434-35.) Plaintiffs further argue that David did not make the payments pursuant to the POA and that he did not comply with the terms of either the POA or the Trust.  (*Id*. at PageID 435-39.)

David's motion, as well as his opposition to Plaintiffs' motion, argues that he was not required to provide written direction under either the Trust or the POA and that the POA gave him additional powers to make gifts from the Trust.  (Doc. No. 67 at PageID 706-07; Doc. No. 70 at PageID 903-05.)  David further argues that Ohio law does not require "vain acts," meaning that he was not required to write a direction from himself as POA to himself as trustee, in order to make disbursements.  (*Id*. at PageID 707-08; Doc. No. 70 at PageID 905-07.)  Additionally, David argues that Plaintiffs have failed to establish that Lester lacked the capacity to make gifts from the Trust, that Lester lacked the capacity to execute the February 2018 POA, or that David exercised undue influence on Lester.  (*Id*. at PageID 715-21.)

The Beneficiary Defendants argue in their motion that Plaintiffs have not pled an independent claim against them.  (Doc. No. 69 at PageID 885-88.)  Specifically, Beneficiary Defendants argue that a claim for constructive trust is not an independent cause of action in Ohio. (*Id*. at PageID 886.)

## A.  Breach of Trust and Breach of Fiduciary Duty

Under Ohio law, "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust."  Ohio Rev. Code § 5810.01(A).  "It is axiomatic that a trustee has a fiduciary duty to a trust beneficiary."  *Dueck v. Clifton Cub Co.*, 2017-Ohio-7161, ¶ 69, 95 N.E.3d 1032, 1053 (8th Dist. 2017) (citing Ohio Rev. Code § 5808.02)).  "A claim of a breach of fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care." *Strock v. Pressnell*, 38

Ohio St.3d 207, 216, 527 N.E.2d 1235, 1243 (1988). "The essential elements of a claim of breach of fiduciary duty are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury resulting proximately therefrom." *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 27, 34 N.E.3d 530, 536 (12th Dist. 2015) (citing *D & H Autobath v. PJCS Properties I, Inc.*, 2012-Ohio-5845, ¶ 28, 983 N.E.2d 891, 900 (12th Dist. 2012)).

David does not argue that he did not owe a duty to Plaintiffs. Indeed, the Trust specifically states: "Trustee shall act at all times in a fiduciary capacity as Trustee, and shall exercise good faith and reasonable care and prudence with respect to all powers granted to Trustee by this Agreement or by law." (Doc. No. 54-1 at PageID 343.) Nor does David argue that there would be no injury resulting from the alleged breach of his fiduciary duty. Thus, the Court's inquiry turns to whether David failed to observe his fiduciary duty. As such, the Court must determine if there is a genuine issue of material fact regarding whether David breached the terms of the trust.

Determining the meaning of disputed language in a trust is a question of law for the Court to decide. *Arnott v. Arnott*, 132 Ohio St.3d 401, 405, 2012-Ohio-3208, ¶ 14, 972 N.E.2d 586, 589-90 (2012). "'A court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent.'" *Id*. (quoting *Domo v. McCarthy*, 66 Ohio St.3d 312, 312, 612 N.E.2d 706, 707 (1993)). "'Interpreting a trust is akin to interpreting a contract; as with trusts, the role of courts in interpreting contracts is 'to ascertain and give effect to the intent of the parties.'" *Arnott*, 132 Ohio St.3d at 405 (quoting *Saunders v. Mortensen*, 101 Ohio St.3d 86, 88, 2004-Ohio-24, ¶ 9, 801 N.E.2d 452, 454 (2004)). "Generally, when the language of the instrument is not ambiguous, a court may ascertain the settlor's intent from the express terms of the trust itself." *KeyBank Nat'l Assoc. v. Firestone*, 2019-Ohio-2910, ¶ 17, 140 N.E.3d 1019, 1024 (8th Dist. 2019) (citing *In re Estate of Davis*, 109 Ohio App.3d 181, 184, 671

8

N.E.2d 1302, 1304 (12th Dist. 1996)).

Here, the basic direction of the Trust requires:

A. <u>Trust Assets</u>. During Grantor's lifetime, Trustee shall accumulate all or any part of the net income of the Trust, or pay all or any part of the net income and/or principal of the Trust to or for the benefit of Grantor, as Grantor directs in writing from time to time.

(Doc. No. 54-1 at PageID 327-28.) Consequently, in order for there to be a distribution from the Trust, there must be a writing from the Grantor (Lester) to the trustee (David). Yet, the record reflects that David did not receive formal written directions from Lester for any of the distributions. (Doc. No. 63-2 at PageID 477, 480.)

The inquiry does not end there, however. David argues that the POA authorized him to make gifts of Lester's assets of his own volition or at Lester's direction without a written instruction. (Doc. No. 67 at PageID 706-07; Doc. No. 70 at PageID 904-05.) David then argues that Ohio law does not require the performance of vain acts or, put simply, that he was not required to produce a written direction from himself as POA to himself as trustee. (Doc. No. 67 at PageID 707-10; Doc. No. 70 at PageID 905-07.)

### i. **Power of Attorney and the Trust**

"A power of attorney is a written instrument authorizing an agent to perform specific acts on behalf of his principal." *Testa v. Roberts*, 44 Ohio App.3d 161, 164, 542 N.E.2d 654, 658 (6th Dist. 1988). A power of attorney "is interpreted according to contract principles." *Kennedy v. Robinson Mem. Hosp.*, 2016-Ohio-6990, ¶ 22, 72 N.E.3d 70, 73 (11th Dist. 2016) (citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978) paragraph one of the syllabus).

David argues that the POA, read in conjunction with the Trust, authorized him to make gifts both at Lester's direction and of his own volition.  (Doc. No. 67 at PageID 706-07.)  Here, the POA provides:

> (a) <u>Individuals.</u>  My Attorney-In-Fact is authorized to make irrevocable gifts of my assets in such amounts from me and at such times as my Attorney-In-Fact deems appropriate to one or more of my issue. . . in any amount from me, whether or not any tax liability is incurred thereby.  My Attorney-In-Fact is authorized to make those gifts in such manner as my Attorney-In-Fact determines. . . .
>
> …
>
> (e) <u>Withdrawal from Trust.</u>  My Attorney-In-Fact shall have the power to exercise any power of withdrawal which I have over a certain Declaration of Trust dated May 15, 1990, as most recently amended and restated by an instrument dated May 10, 2002, and as it may from time to time be further amended, of which I am presently serving as both the Grantor and Trustee, in order to have transferred to a bank account in my name or directly to me or to my Attorney-In-Fact for me cash or securities in order that my Attorney-In-Fact may make the gifts or tuition expense payments or medical care expense payments authorized in this Power of Attorney.  My Attorney-In-Fact may write checks on any account of mine. . . or sign any other instruments of transfer that may be required in order to make the aforementioned gifts and tuition expense payments and medical care expense payments.  My Attorney-In-Fact also may direct the Trustee of my Declaration of Trust to transfer cash or assets directly to any permissible donee hereunder. . . .

(Doc. No. 54-2 at PageID 367-68.)

While the POA certainly gives David certain powers over the Trust, it does not give him the all-encompassing powers he argues for.  "When the language of the trust instrument is unambiguous, a court can ascertain the settlor's intent from the express terms of the trust itself, and extrinsic evidence is not admissible to interpret the trust provisions." *Evans v. Evans*, 2014-Ohio-4450, ¶ 23, 20 N.E.3d 1139, 1151 (4th Dist. 2014) (citing *McDonald v. Alzheimer's Disease Assoc.*, 140 Ohio App.3d 358, 363, 747 N.E.2d 843, 847 (1st Dist. 2000)).  The Trust is unambiguous in its requirement that distributions made from the Trust must be made "for the benefit of Grantor, as Grantor directs in writing from time to time."  (Doc. No. 54-1 at PageID

327-28.)  Moreover, there is no amendment to the Trust that purports to adopt the provisions of the POA.[2]

Therefore, the POA certainly gives David the ability to direct the trustee to "transfer cash or assets."  It also gives him the power that Lester would have to remove assets from the Trust and transfer those assets to himself or Lester, or make a gift of the distributions.  However, the Trust, which is the key document in this analysis, does not create any carve out for the POA that allows him to make distributions without a writing.  Lester, as Grantor, would have needed to create a formal writing directing David to make a disbursement from the Trust.[3]  The POA gives David all the powers that Lester would have, but, as explained above, Lester still had to create a formal writing under the unambiguous terms of the Trust.  Nothing in the POA changes this requirement. It simply gives David the authority to step into Lester's shoes and make that written direction to the trustee.

However, since David is both the POA and the trustee, it implicates his next argument.

### ii. <u>Vain Acts</u>

David argues that Ohio law does not require the performance of vain acts or, put simply, that he was not required to produce a written direction from himself as POA to himself as trustee. (Doc. No. 70 at PageID 905-06.)  Ohio law "'does not require the performance of a vain act.'" *Gerhold v. Papathanasion*, 130 Ohio St. 342, 346, 199 N.E. 353, 354 (1936).  Both parties cite to *Scanlon v. Scanlon*, 2013-Ohio-2694, ¶ 17, 993 N.E.2d 855, 861 (8th Dist. 2013) as illustrative of their position.  (Doc. No. 63 at PageID 434; Doc. No. 70 at PageID 906.)

In *Scanlon*, Thomas Scanlon established a trust with himself as the donor and trustee.  *Id.*

---

[2] Similarly, while it would not likely be an effective amendment to the Trust, the POA does not purport to amend the Trust to provide the POA with expanded powers over the Trust.
[3] David also argues that Lester provided oral directions regarding the disbursement of trust assets.  This argument fails for the same reason as David's POA argument.  The Trust specifically requires written direction, even from Lester.

at ¶ 2.  Following Thomas' death, his wife, Gertrude, became the sole trustee and sole beneficiary of the trust.  *Id*.  The trust also named several contingent beneficiaries, but by the time Gertrude died she had withdrawn virtually all of the trust assets.  *Id*.  After Gertrude's death, two of the contingent beneficiaries sued the estate for breach of fiduciary duty because Gertrude had not made written requests to herself before removing the trust's principal and distributing it to herself.  *Id*. at ¶ 3.  The Ohio Eight District Court of Appeals held that "[r]equiring Gertrude to make a written demand upon herself, *as the sole beneficiary and sole trustee*. . . would be a vain act and unnecessary." *Id*. at ¶ 16 (emphasis added).  Importantly, the *Scanlon* court again pointed out that "Gertrude, *as the sole beneficiary*, would have had to make a written request to herself, *as the sole trustee*." *Id*. at ¶ 18 (emphasis added).

The situation presented in this action and that of *Scanlon* are distinguishable.  The most obvious distinction being that David was not both the sole beneficiary and the sole trustee of the Trust.  Lester was the beneficiary of the Trust during his lifetime and the remaining Sibling Beneficiaries and the Plaintiffs were contingent beneficiaries.  The money in *Scanlon* was distributed from a trust meant to benefit Gertrude to Gertrude herself.  Put simply, the *Scanlon* court held that it was a vain act *where the sole trustee and sole beneficiary were the same person*. To accept David's reading of *Scanlon* would expand the borders of Ohio caselaw beyond where they presently sit.  It is not the province of this Federal Court to do so.  *Imperial Hotels*, 257 F.3d at 620.

Additionally, creating a writing would have allowed Lester to review and ensure the money from the Trust was going where it was meant to go and resulted in a record of such requests. Indeed, the Trust accounts for such a situation and allows any beneficiary to request a written account of the receipts and disbursements of the Trust in a given period.  (Doc. No. 54-1 at PageID

350.) Such writings may have avoided the first two claims in the Amended Complaint entirely.

### iii. Beneficiary Defendants

The Beneficiary Defendants moved for summary judgment on Counts I and II by adopting the arguments made by David. (Doc. No. 69 at PageID 888.) However, the Beneficiary Defendants are never mentioned by Plaintiffs or David in their lengthy discourse over the breach of trust and breach of fiduciary duty claims. Plaintiffs, for their part, argue that Counts I-IV "provide[] for the imposition of a constructive trust" upon the Beneficiary Defendants for a violation of the specific claim, i.e. a finding of liability on Counts I-IV. (Doc. No. 71 at PageID 932.) Therefore, Beneficiary Defendants' part in this claim is limited to their role in any constructive trust the Court may impose.

### iv. Result of the Claims

As explained above, the Trust clearly and unambiguously required a writing from the grantor to the trustee before a disbursement from the Trust's principal could be made. It is undisputed that Lester, as grantor, never directed David, as trustee, to make a disbursement through a formal writing. It is similarly undisputed that David, per his authority under the POA, never directed himself, as trustee, to make a disbursement through a formal writing. David failed to observe this duty as trustee, and the other two elements of the breach of fiduciary duty claim are not disputed. Therefore, the Court finds as a matter of law that David violated his fiduciary duty and breached the trust.

The Court will defer judgment on Plaintiffs' request for damages to a later time, as several claims will survive the pending motions for summary judgment.

Therefore, the Court enters judgment for Plaintiffs regarding liability on Count I, breach of trust, and Count II, breach of fiduciary duty, of the Amended Complaint as alleged against

Defendant David Martin.

### B.  Constructive Trust Claim

Beneficiary Defendants argue that Plaintiffs' claim for constructive trust, Count V, is not an independent cause of action and should be dismissed.  (Doc. No. 69 at PageID 886.)  They further argue that, in order to establish a constructive trust, Plaintiffs must establish by clear and convincing evidence that they are entitled to a constructive trust due to some act of fraud, commission of wrong, unconscionable act, or other questionable means.  (*Id*. at PageID 887.)

In response, Plaintiffs argue that their claim for constructive trust necessarily pleads a claim for unjust enrichment.  (Doc. No. 71 at PageID 933.)  During the hearing, Beneficiary Defendants argued that, even if pleading a claim for constructive trust also pleads a claim for unjust enrichment, Plaintiffs have failed to sufficiently plead the facts necessary for a claim of unjust enrichment.

As an initial matter, Ohio courts have consistently held that "'a constructive trust is a remedy, not a cause of action.'"  *Bonner v. Delp*, 2021-Ohio-3772, ¶ 93, 180 N.E.2d 11, 31 (6th Dist. 2021) (quoting *Graham v. City of Lakewood*, 2018-Ohio-1850, ¶ 58, 113 N.E.3d 44, 57 (8th Dist.)); *see also Figgie v. Figgie*, 2021-Ohio-1195, ¶ 43 (8th Dist. 2021) ("a constructive trust is not an independent cause of action"); *Widok v. Estate of Wolf*, 2020-Ohio-5178, ¶¶ 85-86 (8th Dist. 2020) ("constructive trust is not an independent cause of action").

The question then becomes whether Plaintiffs' constructive trust claim necessarily states a claim for unjust enrichment.  Plaintiffs argue that their constructive trust claim "specifically pleads unjust enrichment."  (Doc. No. 71 at PageID 933.)  In so doing, Plaintiffs rely on *Hurlbut v. Klein*, 2021-Ohio-2167, ¶ 17, 174 N.E.3d 932, 939 (9th Dist. 2021).  Plaintiffs argue that the Court in *Hurlbut* held that "the issue of unjust enrichment was necessarily part of a claim of constructive

14

trust and thus did not need to be plead separately." (Doc. No. 71 at PageID 933.) This is not an entirely accurate statement of the case. Instead, the *Hurlburt* court held: "the issue of unjust enrichment was 'a part of [Ms. Hurlburt's] claim of a constructive trust rather than [a] separate cause[ ] of action, and [she] was not required to plead unjust enrichment' separately." *Hurlburt*, 2021-Ohio-2167, at ¶ 17, 174 N.E.3d at 939 (quoting *Russell v. Russell*, 2015-Ohio-3022, ¶ 26 (5th Dist. 2015)). The Court reads *Hurlburt* to mean that the claim for constructive trust in that case included all the facts necessary to form a claim for unjust enrichment, not that a claim for constructive trust necessarily pleads a claim for unjust enrichment in and of itself.[4]

Therefore, if Plaintiffs' claim for constructive trust is going to survive, it must contain a viable claim for unjust enrichment. A claim for unjust enrichment requires Plaintiffs to establish: "'(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment').'" *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 286, 2005-Ohio-4985, ¶ 20, 834 N.E.2d 791, 799 (2005) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298, 1302 (1984)).

At the hearing, Beneficiary Defendants argued that Plaintiffs cannot satisfy the first element of the *Johnson* test because Plaintiffs did not confer a benefit upon any Beneficiary Defendant. Indeed, Ohio courts have consistently held that plaintiffs must show that *they* conferred a benefit upon the defendant to establish a claim for unjust enrichment. *See Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2017-Ohio-1462, ¶ 27, 81 N.E.3d 499, 506-07 (10th Dist. 2017) ("Because [plaintiff]'s claim failed to describe a benefit it conferred on [defendant] to support its unjust enrichment/quantum meruit claim, the trial court did not err when

---

[4] Plaintiffs fail to cite any Ohio cases that stand for the proposition that a claim for constructive trust is inherently a claim for unjust enrichment.

granting judgment in [defendant]'s favor on the claim"); *Paulus v. Beck Energy Corp.*, 2017-Ohio-5716, ¶ 95, 94 N.E.3d 73, 98 (7th Dist. 2017) ("the plaintiff did not confer a benefit on the defendant in the case at bar"); *Wick v. Ach*, 2019-Ohio-2405, ¶ 15, 139 N.E.3d 480, 486 (1st Dist. 2019) ("Simply pleading. . . that the other party was unjustly enriched by keeping money that 'properly belongs' to him leaves too much to the imagination. . . Absent an indication in the pleading of the benefit conferred, [plaintiff]'s claim was properly dismissed").

Plaintiffs do not allege in their Amended Complaint, or even in their opposition to Beneficiary Defendants' Motion, that they conferred a benefit upon the Beneficiary Defendants. Instead, the Amended Complaint alleges "[t]he funds received by Defendants are the proceeds of David's breach of trust and breach of fiduciary duty. . . ."  (Doc. No. 54 at PageID 314.)  More importantly, for the purposes of evaluating a motion for summary judgment, Plaintiffs have failed to present any evidence that they conferred a benefit upon the Beneficiary Defendants.  Indeed, the evidence presented in the various motions for summary judgment show that David was responsible for distributing the funds to the Beneficiary Defendants, not Plaintiffs.

Therefore, Plaintiffs have failed to allege facts in their Amended Complaint or provide even a scintilla of evidence in support of a potential claim for unjust enrichment under their claim labeled constructive trust.  As a constructive trust is a remedy and not a cause of action, the Court finds that Plaintiffs have failed to create a genuine issue of material fact as to Count V: Constructive Trust Pursuant to 5810.09.

### C.  Constructive Trust Remedy for the Remaining Counts

Under Counts I-IV of the Amended Complaint, Plaintiffs seek the remedy of a constructive trust pursuant to Ohio Rev. Code § 5810.01(B)(9).

The decision to impose a constructive trust lies within the sound discretion of the trial court.

*Bd. of Trumbull Twp. Tr. v. Rickard*, 2017-Ohio-8143, ¶ 96, 98 N.E.3d 800, 821 (11th Dist. 2017) (citing *Willson v. Bd. of Tr. of The Ohio State Univ.*, No. 91AP-144, 1991 Ohio App. LEXIS 6303, at *50, 1991 WL 274862, at *18 (10th Dist. 1991)); *see also Bryan v. Chytil*, 2021-Ohio-4082, ¶ 101 (4th Dist. 2021) (citing *Wills v. Kolis*, 2021-Ohio-4351, ¶¶ 20, 31 (8th Dist. 2010)).   A constructive trust is an equitable remedy that may be invoked when property has been acquired by fraud or "where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." *Ferguson v. Owens*, 9 Ohio St.3d 223, 226, 459 N.E.2d 1293, 1295-96 (1984) (citing 53 Ohio Jurisprudence, Trusts, Section 88, at 578–579 (2d Ed. 1962)); *see also Dice v. White Family Cos.*, 173 Ohio App.3d 472, 485, 2007-Ohio-5755, ¶ 56, 878 N.E.2d 1105, 1115 (2nd Dist. 2007) ("Nevertheless, the absence of wrongdoing is not fatal to [plaintiff]'s unjust-enrichment and constructive-trust claim").   A constructive trust is considered a trust because, "'[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.'"   *Ferguson*, 9 Ohio St.3d at 225 (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (N.Y. 1919)).   The party seeking to impose a constructive trust "'bears the burden of producing clear and convincing evidence justifying'" the trust.  *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 282, 2006-Ohio-2418, ¶ 23, 847 N.E.2d 405, 412 (2006) (citing *Univ. Hosp. of Cleveland, Inc. v. Lynch*, 96 Ohio St. 3d 118, 2002-Ohio-3748, 772 N.E.2d 105 (2002), paragraph three of the syllabus).

The Court has already ruled in favor of Plaintiffs on Count I and Count II of the Amended Complaint, which seek constructive trust as a remedy.  However, Count III, conversion, and Count IV, intentional interference with an expectancy of inheritance, also seek constructive trust as a remedy in the event Plaintiffs are successful on those claims. (Doc. No. 54 at PageID 312-14.)

Counts I-IV all request the Court "[i]mpose a constructive trust on all monies received by Defendants in 2019 and 2020 from the Trust including from the Trust via Lester's Fifth Third Account."  (*Id*. at PageID 308-14.)

It also has already been established that the Beneficiary Defendants received their money because David violated his fiduciary duties and breached the trust.  However, Count III and Count IV raise separate questions about the wrongful and intentional nature of David's actions.  (*Id*. at PageID 312-14.)  Moreover, as a practical matter, the imposition of a constructive trust would cover the money "received by Defendants in 2019 and 2020 from the Trust including from the Trust via Lester's Fifth Third Account," regardless of whether the Court decided to impose a constructive trust pursuant to Counts I-IV individually or for Counts I-IV collectively.  As this decision rests in its sole discretion, this Court believes that making a determination on whether to impose a constructive trust on David and the Beneficiary Defendants is premature while claims seeking a constructive trust remedy remain outstanding.

### D.  <u>Lack of Capacity and Undue Influence Claims</u>

Plaintiff's Amended Complaint alleges six other claims: Count III (Conversion), Count IV (intentional interference with an expectancy of inheritance), Count VI (recission of the authorization or direction of distributions from trust for lack of capacity), Count VII (recission of authorization or direction of distributions from the trust for undue influence), Count VIII (recission of the power of attorney for lack of capacity), and Count IX (recission of the power of attorney for undue influence).  (Doc. No. 54 at PageID 312-24.)

David argues that four of these claims, which all relate to undue influence or lack of capacity, should be dismissed because Plaintiffs have not proved that Lester lacked testamentary capacity or was unduly influenced.  (Doc. No. 67 at PageID 715-16.)  David further argues that

18

"[a]ssuming Lester's *inter vivos* gifts are valid and Lester possessed testamentary capacity until the end of his life, Plaintiffs' remaining, ancillary causes of action [Count III and Count IV] lack a basis in fact and are also subject to summary judgment." (Doc. No. 67 at PageID 721; Doc. No. 69 at PageID 888.) In response, Plaintiffs argue that there is conflicting evidence from the experts who evaluated Lester's mental capacity, the witnesses who observed Lester in his final years, and the transactions that make up the crux of this action. (Doc. No. 72 at PageID 951-56.) Plaintiffs similarly argue that the questions of fact regarding Lester's mental state and the nature of David's transactions under the POA and Trust leave a genuine dispute of fact as to the undue influence claims. (*Id*. at PageID 956-57.)

Plaintiffs claim under Count III, conversion, requires them to prove, "'(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.'" *Dice*, 2007-Ohio-5755, at ¶ 17 (*quoting Haul Transport of VA, Inc. v. Morgan*, No. 14859, 1995 Ohio App. LEXIS 2240, at *9, 1995 WL 328995, at *3 (2nd Dist. June 2, 1995).

Two of Plaintiffs' claims, Count VI and Count VIII, question Lester's capacity to make the distributions and to make David the POA. "Testamentary capacity exists where the testator has sufficient mind and memory (1) to understand the nature of the business in which he is engaged, (2) to comprehend generally the nature and extent of his property, (3) to hold in his mind the names and identities of those who had natural claims upon his bounty, and (4) to be able to appreciate his relation to members of his family." *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 658-59, 626 N.E.2d 1017, 1026 (8th Dist. 1993) (citing *Niemes v. Niemes*, 97 Ohio St. 145, 155, 119 N.E. 503, 506 (1917)).

19

The other three claims, Count IV,[5] Count VII, and Count IX, question whether Lester was unduly influenced to make the distributions and to appoint David as the POA. "In order to show undue influence, the plaintiff must demonstrate: (1) a susceptible testator, (2) another's opportunity to exert influence, (3) the fact of improper influence exerted or attempted, and (4) the result showing the effect of such influence." *Foelsch v. Farson*, 2020-Ohio-1259, ¶ 15, 153 N.E3d 601, 607 (5th Dist. 2020) (citing *West v. Henry*, 173 Ohio St. 498, 501, 184 N.E.2d 200 (1962)).

The evaluation of Lester's mental capacity requires credibility determinations, both of the family members and other witnesses who observed Lester in his final years and of the expert witnesses (retained by both parties) who evaluated Lester's mental capacity. Moreover, an evaluation of David's actions and whether he exerted influence over Lester would involve a credibility determination concerning David, at the very least. In ruling on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbings Prods.*, 503 U.S. 133, 150, 120 S. Ct. 2097 (2000) (citing *Anderson*, 477 U.S. at 255; *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 503 (6th Cir. 2014). Therefore, the Court finds that genuine disputes of material fact exist as to Counts III, IV, VI, VII, VIII, and IX.

---

[5] To prove a claim of intentional interference with the expectancy of an inheritance, a plaintiff must demonstrate (1) an existence of an expectancy of inheritance; (2) an intentional interference by the defendant with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious in nature, such as fraud, duress, or undue influence; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damages resulting from the interference. *Firestone v. Galbreath*, 67 Ohio St.3d 87, 88, 616 N.E.2d 202, 203 (1993).

IV.    **CONCLUSION**

For the reasons stated above, the Court **ORDERS** that:

1.  Motion for Summary Judgment of Plaintiffs' Daniel Stewart and Rachel Kosoff (Doc. No. 63) is **GRANTED IN PART**, such that:

    a.  The Court enters judgment in favor of Plaintiffs Daniel Stewart and Rachel Kosoff on liability only on Count I, Breach of Trust Pursuant to Ohio R.C. 5810.01;

    b.  The Court enters judgment in favor of Plaintiffs Daniel Stewart and Rachel Kosoff on liability only on Count II, Breach of Fiduciary Duty;

    c.  The Court defers judgment on damages to a later time;

2.  Defendant's Motion for Summary Judgment (Doc. No. 67) is **DENIED**; and,

3.  Defendants Betsy Martin-Smith, Janet Bertolino, Jessica Martin Bryan, Andrew Bertolino, Christina Martin, Dominic Bertolino, Kathryn Martin, Elizabeth Bertolino, Sam Martin, Susan M. Weinert, Ellie D. Smith, Hannah Weinert, Christopher M. Smith, and Callie Weinert's Motion for Summary Judgment Pursuant to Rule 56 (Doc. No. 69) is **GRANTED IN PART** and **DENIED IN PART**, such that:

    a.  Plaintiffs' Count V, Constructive Trust Pursuant to 5810.09, is **DISMISSED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, March 8, 2023.

s/Thomas M. Rose

_____
                THOMAS M. ROSE
                UNITED STATES DISTRICT JUDGE