UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| Daniel Stewart, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:21-cv-89 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| David W. Martin, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**JUDGMENT ENTRY AND ORDER GRANTING DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(B) FOR
LACK OF SUBJECT MATTER JURISDICTION (DOC. NO. 140)**

Before the Court is Defendants' Motion for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(B) for Lack of Subject Matter Jurisdiction ("Motion") (Doc. No. 140). In the Motion Defendant David W. Martin ("David") seeks to have this matter dismissed entirely due to an alleged lack of subject matter jurisdiction. (*Id*. at PageID 2074.) Specifically, David argues the Court lacks subject matter jurisdiction because Plaintiffs Daniel Stewart and Rachel Kosoff (collectively, "Plaintiffs") have not suffered an injury that satisfies the Constitutional standing requirement. (*Id*. at PageID 2082)

For the reasons discussed below the Court **GRANTS** the Motion.

**I. BACKGROUND**

This matter stems from disputes involving a Second Restatement of Declaration of Trust ("Trust") executed by Lester Martin ("Lester") on May 15, 1990, which was subsequently restated in 1995 and 2002. (Doc. No. 54-1.) The Trust provided that, upon Lester's death, the Trust's assets would be divided evenly among his living children and the offspring of his deceased

1

children. (Doc. No. 54-1 at PageID 333.) Lester and his wife, who predeceased him, had five children: David, Betsy Martin Smith, Janet Bertolino, Susan Weinert, and Sarah Stewart. (Doc. No. 54 at PageID 301-02; Doc. No. 55 at PageID 373-74; Doc. No. 56 at PageID 392.) Sarah Stewart died on April 3, 2011 and is survived by Plaintiffs, her two children. (*Id.*) Lester also had eleven other grandchildren: Jessica Martin Bryan, Andrew Bertolino, Christina Martin, Dominic Bertolino, Kathryn Martin, Elizabeth Bertolino, Sam Martin, Ellie D. Smith, Hannah Weinert, Christopher M. Smith, and Callie Weinert.

On February 20, 2018, Lester executed a First Amendment of the Trust, appointing David as successor trustee. (Doc. No. 54-1 at PageID 358-59.) On the same day, Lester resigned as trustee and David accepted his appointment as trustee. (*Id.* at PageID 360-61.) Also on February 20, 2018, Lester executed a Durable Power of Attorney ("POA") in which he granted power of attorney to David. (Doc. No. 54-2.)

### A. **Trust Payments**

Over the course of 2019 and 2020, David made several distributions from the Trust to Plaintiffs and Sibling Beneficiaries and Grandchildren Beneficiaries (collectively, "Beneficiary Defendants"), including:

2019

- April 28, 2019:
    - $165,000 to Grandchildren Beneficiaries ($15,000 each).
- December 15, 2019:
    - $8 million to David and Sibling Beneficiaries ($2,000,000 each).
    - $1.1 million to Grandchildren Beneficiaries ($100,000 each).
    - $200,000 to Plaintiffs ($100,000 each).

<u>2020</u>

- March 6, 2020:
    - $3 million to David and Sibling Beneficiaries ($750,000 each).
    - $165,000 to Grandchildren Beneficiaries ($15,000 each).
- March 10, 2020:
    - $800,000 to David and Sibling Beneficiaries ($200,000 each).
    - $400,000 to 2012 trusts for the benefit of Plaintiffs ($200,000 each).
    - $100,000 to Plaintiffs ($50,000 each).

(Doc. No. 54 at PageID 306-07; Doc. No. 55 at PageID 377; Doc. No. 56 at PageID 395.)

Lester died on March 13, 2020. (Doc. No. 54 at PageID 308; Doc. No. 55 at PageID 378; Doc. No. 56 at PageID 395.)

### B. **Procedural Background**

Plaintiffs filed their Complaint on March 11, 2021 (Doc. No. 1) and subsequently filed an Amended Complaint on December 22, 2021 (Doc. No. 54). Plaintiffs alleged claims of breach of trust; breach of fiduciary duty; conversion; intentional interference with an expectancy of inheritance; constructive trust; recission of the authorization or direction of distributions from trust for lack of capacity; recission of authorization or direction of distributions from the trust for undue influence; recission of the power of attorney for lack of capacity; and, recission of the power of attorney for undue influence. (*Id*. at PageID 308-24.) The Parties ultimately filed opposing motions for summary judgment. (Doc. Nos. 63, 70, 73). The Court entered judgment in favor of Plaintiffs on Count I, breach of trust, and Count II, breach of fiduciary duty, but deferred ruling on damages. (Doc. No. 77 at PageID 1308.) The Court also dismissed Plaintiffs' Count V, constructive trust, and denied summary judgment on the other remaining counts. (*Id*.)

On May 24, 2023, Plaintiffs filed Plaintiffs Daniel Stewart and Rachel Kosoff's Motion for Final Judgment on Count I and II of the First Amended Complaint ("Motion for Final Judgment"). (Doc. No. 78.) In the Motion for Final Judgment Plaintiffs asked the Court to: (1) enter judgment on damages as to Count I, breach of trust, and Count II, breach of fiduciary duty; (2) award Plaintiffs their costs, fees, and reasonable attorney's fees; and, (3) enter final judgment on Counts I and II and certify those counts for appeal pursuant to Fed. R. Civ. P. 54 (b). (Doc. No. 78.) On July 27, 2023, the Court denied the Motion for Final Judgment. (Doc. No. 82.) In so doing, the Court found that questions of fact remained regarding the amount of damages. (*Id*.) Specifically, the Court found that a failure to account for interest earned by Plaintiffs on the money improperly placed in their trust accounts may result in a windfall. (*Id*. at PageID 1354-55.) The Court further held that a failure to account for the amount of money Plaintiffs had removed from the trusts over the preceding three years may similarly result in a windfall. (*Id*. at PageID 1355.)

On January 25, 2024, the Court dismissed Counts VI-IX, claims plead in the alternative, with prejudice. (Doc. No. 112.) On February 22, 2024, the Court entered an order by agreement of the Parties, striking Counts III-IV–for conversion and intentional interference with expectancy of inheritance–with prejudice, striking the prayer for punitive damages in Counts I-II, and striking the prayer for constructive trust in Counts I-II. (Doc. No. 119.)

The Court conducted a jury trial from March 4, 2024 to March 5, 2024 on the issue of damages as to Counts I-II. After the close of Plaintiffs' case-in-chief, David moved for a directed verdict, arguing that Plaintiffs had failed to prove their damages with a reasonable degree of certainty. (Doc. No. 142 at PageID 2237-40.) The Court denied the motion for directed verdict. (*Id*. at PageID 2241.) The jury returned a verdict in favor of Plaintiffs in the amount of $2,086,000. (Doc. No. 133.)

On April 3, 2024, David filed his Motion (Doc. No. 140), Plaintiffs filed their opposition on April 24, 2024 (Doc. No. 148), and David filed his reply on May 8, 2024 (Doc. No. 153).

## II.  STANDARD OF REVIEW

### A. Relief from Judgment

Pursuant to Fed. R. Civ. P. 60(b), the court may relieve a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "A judgment is void under 60(b)(4) 'if the court that rendered it lacked jurisdiction of the subject matter….'" *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (quoting *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992)). "A void judgment under Rule 60(b)(4) occurs '[o]nly in the rare instance of a clear usurpation of power' by the court." *Fussell v. Wilkinson*, No. 1:03-cv-704, 2009 U.S. Dist. LEXIS 86466, at *4, 2009 WL 3010850, at *2 (S.D. Ohio Sep. 21, 2009) (quoting *Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 516 (6th Cir. 2001)).

"A decision to grant or deny a Rule 60(b) motion 'is a matter of discretion for the district court.'" *Berishaj v. Bank of New York Mellon*, No. 12-10892, 2013 U.S. Dist. LEXIS 52780, at *2, 2013 WL 12214381, at *1 (E.D. Mich. Apr. 12, 2013) (quoting *Bank of Montreal v. Olafsson*, 648 F.2d 1078, 1079 (6th Cir. 1981)). "Relief from a judgment or order under Federal Rule of Civil Procedure 60(b) is an 'extraordinary remedy that is granted only in exceptional

5

circumstances.'" *Berishaj*, 2013 U.S. Dist. LEXIS 52780, at *2, 2013 WL 12214381, at *1 (quoting *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502-03 (6th Cir. 2000)).

### III. ANALYSIS

David argues, that Plaintiffs lack standing to bring their claims for breach of trust and fiduciary duty and, consequently, the Court does not have jurisdictions over this matter.[1] (Doc. No. 140 at PageID 2074.)

#### A. Jurisdiction

Article III of the Constitution limits the jurisdiction of federal courts to actual cases or controversies. CONST. art. III, § 2. The doctrine of standing is an essential component of the case or controversy requirement of Article III and "limits the category of litigants empowered to maintain a lawsuit in federal court to [those who] seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). A plaintiff must satisfy the "irreducible constitutional minimum" of standing. *Id*. "Standing is a component of subject-matter jurisdiction." *Harris v. Lexington-Fayette Urban Cnty. Gov.*, 685 Fed. Appx. 470, 472 (6th Cir. 2017). "To establish standing, plaintiffs bear the burden of showing (1) a concrete and particularized injury-in-fact which (2) is traceable to the defendant's conduct and (3) can be redressed by a favorable judicial decision." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 343 (6th Cir. 2023) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

A concrete harm is one that is real and not abstract—i.e., it "actually exist[s]." *Spokeo*,

---

[1] The Court will consider the jurisdictional argument solely under Rule 60. David did not raise an argument as to standing when he moved for a directed verdict at trial. "A Rule 50(b) motion 'is only a renewal of the preverdict motion,' and 'it can be granted only on grounds advanced in the preverdict motion.'" *Kay v. United of Omaha Life Ins. Co.*, 709 F. App'x 320, 328 (6th Cir. 2017) (quoting *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 491 (6th Cir. 2008)). Thus, failure to make a motion under Rule 50(a) forfeits the ability to make an argument under Rule 50(b). *Hanover Am. Ins. Co. v. Tattooed Millionaire Entm't, LLC*, 974 F.3d 767, 780 (6th Cir. 2020).

578 U.S. at 340. A mere procedural violation of a statutory right does not amount to a concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426, 141 S. Ct. 2190, 210 L.Ed.2d 568 (2021) (citing *Spokeo*, 578 U.S. at 340). "'Article III standing requires a concrete injury even in the context of a statutory violation.'" *TransUnion*, 594 U.S. at 426 (citing *Spokeo*, 578 U.S. at 340). "Congress's decision to create a statutory cause of action may 'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law,' so long as those injuries 'exist' in the real world.'" *Dickson*, 69 F.4th at 343 (quoting *TransUnion*, 594 U.S. at 426) (citations omitted). In determining whether an intangible harm rises to the level of a concrete injury, courts may look to (1) history and tradition and (2) Congress's judgment in enacting the law at issue. *TransUnion*, 594 U.S. at 425-26.

"Standing is to be determined as of the time the complaint is filed." *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004) (quotations omitted). However, "'when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.'" *Gateway KGMP Dev., Inc. v. Tecumseh Prods.*, 731 F.3d 586, 589 (6th Cir. 2013) (quoting *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007)); *NOCO Co. v. OJ Com., LLC*, 35 F.4th 475, 480 (6th Cir. 2020) ("The amended complaint, of course, supersedes the original complaint. And it must stand on its own jurisdictional basis"); *Bare v. Cardinal Health, Inc.*, No. 22-5557, 2023 U.S. App. LEXIS 2195, at *6, 2023 WL 395026, at *2 (6th Cir. Jan. 5, 2023) ("That means a plaintiff's standing must be assessed anew any time he seeks to amend his complaint").

### i. Contingent Beneficiaries and Revocable Trusts

David contends that under Ohio law a contingent beneficiary's interest in a trust does not vest until the settlor's death. (Doc. No. 140 at PageID 2080-82.) Moreover, David asserts that the

7

actions and distributions Plaintiffs complain of occurred during Lester's lifetime. (*Id*. at PageID 2082.) Consequently, as Lester was the settlor and sole beneficiary of the Trust during his lifetime and Plaintiffs were contingent beneficiaries, Plaintiffs' interests in the Trust did not vest until Lester's death. (*Id*.)

In response, Plaintiffs argue that they have statutory standing under Ohio Rev. Code § 5810.01. (Doc. No. 148 at PageID 2339.) Furthermore, Plaintiffs argue that the issue of whether they have standing under Ohio Rev. Code § 5810.01 is not a question of subject matter jurisdictions, but one of capacity to the bring their claims. (*Id*. at PageID 2340.) Finally, Plaintiffs argue that Ohio law allows for their claims because their First Amended Complaint made multiple allegations of wrongful conduct. (*Id*. at PageID 2342.)

Ohio law has long held that a beneficiary of a trust only possesses an equitable interest in the trust until their interest is vested. *First Nat. Bank of Cincinnati v. Tenney*, 165 Ohio St. 515, 518, 138 N.E.2d 15 (Ohio 1956). The settlor of a revocable trust retains the right to change the beneficiaries, use all of the assets in the trust, or revoke the trust during their lifetime. *Lewis v. Star Bank, N.A., Butler Cty.*, 80 Ohio App. 3d 709, 712, 630 N.E.2d 418 (Ohio Ct. App. 1993). Consequently, where a contingent beneficiary's claimed injuries occurred during the lifetime of the settlor, Ohio courts have held that the contingent beneficiary's injuries could not have existed prior to the death of the settlor. *Campbell v. Donald A. Campbell 2001 Trust*, 2021-Ohio-1731, at ¶ 41 (Ohio Ct. App. May 20, 2021) (citing *Cartwright v. Batner*, 2014-Ohio-2995, at ¶ 57, 15 N.E.3d 401 (Ohio Ct. App. 2014)). As such, the contingent beneficiary is not entitled to the corpus of the trust while the settlor is still alive. *Lewis*, 90 Ohio App. 3d at 420-21 (finding that as long as the settlor retained the power to revoke the trust, contingent beneficiaries "had no absolute entitlement to anything"); *Campbell*, 2021-Ohio-1731, at ¶ 41 ("[plaintiff's] claimed injuries, as a

8

beneficiary of the… [t]rust, cannot truly have existed before [settlor's] death in April 2015. This is because it was not until her death that any of her descendants would become entitled to any distributions from either of the trusts, and any distributions would be from whatever assets [settlor] left in the trusts"); *Papps v. Karras*, 2015-Ohio-1055, at ¶ 13 (Ohio Ct. App. 2015) (plaintiff only had an interest in the books that would pass to him under the terms of an irrevocable trust if the books were part of the trust corpus when the settlor passed).

Plaintiffs cite to one case where Ohio courts have not dismissed actions brought by contingent beneficiaries. *See Bryan v. Chytil*, 2021-Ohio-4082 (Ohio Ct. App. 2021). The Court would note that one key difference between *Bryan* and the cases cited above, is the fact the settlor died prior to many of the complained of actions. *Id*. at ¶ 10. Moreover, neither the parties nor the court in *Bryan* raised the issue of standing nor was the case brought in federal court where it would be subject to the same considerations at play here. Thus, the Court is not convinced that this case, the only one cited by Plaintiffs, outweighs the precedent cited above.

In this instance, the Trust is a revocable trust where Lester was both settlor and the sole beneficiary, after the death of his wife. The corpus of the Trust was Lester's to do with what he may. Plaintiffs' interest in the Trust corpus did not vest until the moment Lester passed and, as such, they had no entitlement to monies that passed in or out of the Trust prior to that point in time. One cannot be injured by the deprivation of something that was not theirs to begin with.

### ii. Bad Faith Exception

Plaintiffs argue that even where a beneficiary's interest is contingent they may still be able to bring a claim if there are allegations of fraud, bad faith, or other malicious conduct. (Doc. No. 148 at PageID 2342.) In support of this point, Plaintiffs point to the First Amended Complaint where they made multiple allegations of wrongful conduct. (*Id*.) For his part, David argues that

9

"[a]bsent allegations of malfeasance or incapacity, they have no standing to bring an action in this court." (Doc. No. 153 at PageID 2427.)

Prior to trial, Plaintiffs moved to amend the First Amended Complaint and strike Counts III and IV, which plead claims of conversion and intentional interference. (Doc. No. 116.) The Court granted that motion. (Doc. No 119.) As discussed above, the Court looks to the amended complaint to determine jurisdiction. *Gateway KGMP*, 731 F.3d at 589; *NOCO Co.*, 35 F.4th at 480; *Bare*, 2023 U.S. App. LEXIS 2195, at *6, 2023 WL 395026, at *2. Plaintiffs elected to amend their complaint and drop their claims alleging bad faith.[2] Thus removing the bad faith allegations from consideration by the Court in determining whether Plaintiffs have suffered an injury capable of satisfying the Constitutional standing requirement.

### iii. Statutory Standing

Plaintiffs also argue that they have "statutory standing" under Ohio Rev. Code § 5810.01. (Doc. No. 148 at PageID 2339-40.) In reply, David maintains that even if Plaintiffs have statutory claims, they must still satisfy the Constitutional standing requirements and demonstrate a concrete harm. (Doc. No. 153 at PageID 2424.) Specifically, David argues that Ohio Rev. Code § 5810.01 protects a procedural interest and the statute alone does not create a harm that may confer standing. (*Id*. at PageID 2425-26.)

"Statutory standing" is a misnomer, as it is not actually a question of standing, rather it is, "simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Soehnlen v. Fleet Owners Inc. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (quoting *Am. Psy. Assn. v.*

---

[2] The Court is also skeptical of the applicability of *Cartwright* in this particular instance. The Ohio court of appeals, citing the Ohio Supreme Court in *Shoemaker v. Gindlesberger*, 118 Ohio St. 3d 226, 2008-Ohio-2012, 887 N.E.2d 1167 (Ohio 2008), made clear that "privity may be overridden" if circumstances such as bad faith were present. *Cartwright*, 2015-Ohio-2995, at ¶ 60 (citing *Simon v. Zipperstein*, 32 Ohio St. 3d 74, 76, 512 N.E.2d 636 (1987)). In both *Shoemaker* and *Zipperstein*, the Ohio Supreme Court's analysis is limited to circumstances involving standing of third-parties to sue attorneys. Those are not the circumstances before the Court, though the Court need not decide this issue for the reasons set forth in Section A.ii.

10

*Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016)). Moreover, "where a plaintiff alleges a statutory violation, that plaintiff must also fulfill Article III standing irrespective of the statutory violation." *Chapman v. Nat. Health Plans & Benefits Agency, LLC*, 619 F. Supp. 3d 788, 791 (E.D. Mich. 2022) (citing *Garland v. Orlans, PC*, 999 F.3d 432, 436 (6th Cir. 2021)). Put simply, statutory standing alone does not create Article III standing. *Chapman*, 619 F. Supp. 3d at 791 (citing *Garland*, 999 F.3d at 436). Thus, a plaintiff may fall within the category of persons who has a cause of action under the statute, but if they have not suffered a concrete harm, the plaintiff will not have standing.

In determining whether a statute is sufficient to create a harm for standing purposes, the Supreme Court in *Spokeo* directed lower courts to consider whether the harm stemming from the violation of a procedural statute has, "(i) a close relationship to the harm Congress sought to avoid in passing the statute and (ii) 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit.'" *Merck v. Walmart, Inc.*, No. 2:20-cv-2908, 2023 U.S. Dist. LEXIS 131712, at *10, 2023 WL 4848510, at *4 (S.D. Ohio July 28, 2023) (quoting *Spokeo*, 578 U.S. at 341). As to history's role, *Spokeo* instructs that, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," 578 U.S. at 341, "e.g., reputational harms, disclosure of private information, intrusion upon seclusion, abridgment of free speech, and infringement of free exercise." *Portnoy v. Nat. Credit Sys., Inc.*, No. 1:17-cv-834, 2021 U.S. Dist. LEXIS 238303, at *5, 2021 WL 5918911, at *2 (S.D. Ohio Dec. 14, 2021) (citing *Spokeo*, 578 U.S. at 341).

The commentary to Ohio Rev. Code § 5810.01 makes several observations helpful to the Court's *Spokeo* analysis:

> This section codifies the remedies available to rectify or to prevent a breach of trust for violation of a duty owed to a beneficiary. The duties that a trust might breach include those contained in Article 8 in addition to those specified elsewhere in the Code.
>
> This section identifies the available remedies but does not attempt to cover the refinements and exceptions developed in case law. The availability of a remedy in a particular circumstance will be determined not only by this Code but also by the common law of trusts and principles of equity.
>
> […]
>
> Traditionally, remedies for breach of trust at law were limited to suits to enforce unconditional obligations to pay money or deliver chattels. Otherwise, remedies for breach of trust were exclusively equitable, and as such, punitive damages were not available and findings of fact were made by the judge and not a jury.

Ohio Rev. Code § 5810.01 (citing Restatement (Second) of Trusts § 198 (1959)).

As an initial matter, the commentary makes clear that Section 5810.01 does not create a statutorily defined harm, but defines the remedies a party may pursue "to rectify or to prevent a breach of trust for violation of a duty owed to a beneficiary." *Id*. Thus, the only plaintiffs who would fall within in the statute are those who are owed a duty which has been or may be breached. Therefore, even if David owed Plaintiffs a duty during Lester's lifetime, that alone would not create a concrete and particularized harm as required for Plaintiffs to have standing.

For instance, if prior to Lester's death it had been discovered that David, in his role as POA, was not properly creating a writing ordering himself, as Trustee, to make distributions then the Court could have ordered David to repay the Trust or it could have enjoined him from making any further distributions without a writing. Ohio Rev. Code § 5810.01(B)(2)-(3). If Plaintiffs had brought that suit with Lester living and the Court had determined they were owed a duty, the same remedies would have been available to the Court. That money would still have belonged to Lester, however, and would have returned to the Trust for Lester to spend as he wished. Plaintiffs' interest in that money would vest only if the money was in the Trust corpus when Lester died. *See Papps*,

12

2015-Ohio-1055 at ¶ 13.

Moreover, the commentary makes clear that traditional basis for breach of trust actions "were limited to suits to enforce unconditional obligations to pay money or deliver chattels." Ohio Rev. Code § 5810.01. As explained above, Plaintiffs were entitled only to an interest in the corpus of the Trust upon Lester's death. Certainly, there was no "unconditional obligation to pay money or deliver chattel" when the complained of actions occurred and there is no allegation that monies or chattel Plaintiffs were entitled to upon Lester's death were not properly delivered.

Thus, the harm Plaintiffs complain of bares no close relationship to the purpose the Ohio legislature sought to codify nor is the harm of the type traditionally regarded as providing a basis for a lawsuit in these circumstances. Plaintiffs were not entitled to the money distributed from the Trust at the time David acted. Therefore, Plaintiffs have no injury that may satisfy the Constitutional standing requirement.

It is not clear to the Court why this issue was raised so late in the litigation or, at least, why it was not raised prior to a trial that consumed the resources of both the Court and the Parties. Regardless of this concern, if Plaintiffs do not have standing to pursue a claim, then this Court does not have jurisdiction to hear the claim.

IV. **CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(B) for Lack of Subject Matter Jurisdiction (Doc. No. 140). The Clerk is directed to terminate this matter on the docket.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, June 25, 2024.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

13